## FOREIGN & DOMESTIC MUSIC CORPORATION v. MICHAEL M. WYNGATE, Inc., et al.

District Court, S. D. New York.
Jan. 30, 1946.

Henry Pearlman, of New York City, for plaintiff.

Gustave I. Jahr, of New York City, for defendants.

NEVIN, District Judge (sitting by designation).

This is an action by plaintiff to restrain defendants from an alleged infringement of certain copyrighted songs, and for damages sustained by reason of such alleged infringement.

The complaint, in substance, alleges that plaintiff is the copyright owner of five [1] songs mentioned in the complaint, and that after September 1, 1941, defendants infringed upon the copyrights by utilizing the songs in a certain film entitled, "Ecstasy."

Plaintiff prays, (1) that defendants be enjoined from infringing upon the copyrighted songs; (2) that defendants be re-

---

[1] At the trial it was agreed that two of the songs are substantially identical and differ only as to their title. Four songs, therefore, are actually involved here.

quired to pay to plaintiff such damages as plaintiff has sustained by reason of infringement and to account and pay over to plaintiff all the gains, profits and advantages derived by defendants from such infringement, and such other damages as to the Court shall appear proper within the provisions of the copyright statutes; (3) that defendants be required to deliver up for impounding all sound tracks of the film "Ecstasy" infringing the copyrights; (4) that defendants pay to plaintiff the costs of this action and reasonable attorney's fees, and (5) for such other and further relief as may be just.

The second amended answer of defendants denies the material allegations of the bill of complaint—some because of lack of knowledge or information. Defendants admit receiving a communication from plaintiff's attorney on September 19, 1942, asserting that the use of the four songs on the sound track of the motion picture "Ecstasy" constituted an infringement of the copyrights of plaintiff.

The answer also contains four separate defenses each designated as a "distinct and complete defense." It is unnecessary to here recite all the details of these defenses.

Defendants pray for "judgment dismissing the complaint as against them, with full costs of this action, including as part thereof, a reasonable attorney's fee."

At the trial, at the conclusion of plaintiff's case in chief, defendants moved to dismiss. This motion was renewed at the close of the case. The motion, in each instance, was tentatively overruled by the Court, with the understanding that the Court would make a definite ruling upon final submission. Upon consideration, the Court finds that each of these motions is not well taken and that each should be and it is here and now definitely and finally overruled.

The record comprises the testimony of a number of witnesses together with numerous documentary exhibits. Since the trial, voluminous and exhaustive briefs have been filed. These set out in considerable detail the claims of the respective parties, together with citations from the statutes and authorities which they assert sustain them. These the Court has painstakingly examined and considered. In the view of the Court no useful purpose would be served, however, in here reciting these various and conflicting contentions for, as stated by Judge Woolsey in Penmac Corporation v. Esterbrook Steel Pen Co., D.C., 27 F.Supp. 86, at page 87, "it is now a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opinion must now be taken by formal findings of fact and conclusions of law, separately stated and numbered. Title 28 United States Code, Section 723, 28 U.S.C.A. § 723."

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

Findings of Fact.

1. This is a suit arising under the Copyright Laws of the United States.

2. At and during all the times herein mentioned, after its incorporation in September, 1935, plaintiff Foreign and Domestic Music Corp. was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

3. Plaintiff Foreign and Domestic Music Corp. was incorporated for the purpose of engaging in the publication, distribution and exploitation of musical compositions, and ever since its incorporation has been and still is engaged in that business.

4. At and during all the times herein mentioned, after its incorporation in April, 1940, defendant Michael M. Wyngate, Inc., was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

5. Defendant Michael M. Wyngate, Inc. was incorporated "for the purpose of business with foreign countries, especially with France, in exportation of machine tools, et cetera."

6. At and during all the times herein mentioned, defendant, Harbran, Inc., was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

7. Between June 1, 1942, and October 30, 1942, defendant, Harbran, Inc., operated the Gaiety Theatre at 1547 Broadway, Borough of Manhattan, City of New York, exhibiting motion pictures therein at public performances for profit.

8. Between July 3, 1942, and September 30, 1942, defendant, Harbran, Inc., exhibited at public performances for profit, among other motion pictures, the film known as "Ecstasy."

9. At and during all the times herein mentioned, after its incorporation in September, 1932, Jewel Productions, Inc., was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

10. Jewel Productions, Inc., was incorporated for the purpose of engaging in the production, exploitation, distribution and exhibition of motion pictures, and ever since its incorporation has been and still is engaged in that business.

11. At and during all the times herein mentioned, after its incorporation in May, 1934, Eureka Productions, Inc., was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York.

12. Eureka Productions, Inc., was incorporated for the purpose of engaging in the production, exploitation, distribution and exhibition of motion pictures, and ever since its incorporation has been and still is engaged in that business.

13. Ever since their incorporation Samuel Cummins has been and he still is, general manager of Foreign and Domestic Music Corp., plaintiff herein, Eureka Productions, Inc., and Jewel Productions, Inc., respectively. He was also general manager of Cummins Pictures, Inc., during its existence.

14. Faith Cummins is the wife of Samuel Cummins. She is and since April 2, 1941, has been president of Foreign and Domestic Music Corp., plaintiff herein.

15. Rose Chatkin and Celia H. Cohen are sisters of Samuel Cummins.

16. Ever since its incorporation, Rose Chatkin has been and still is president of Eureka Productions, Inc. Since January, 1935, she has been a director and is now also treasurer of the corporation.

17. Ever since its incorporation Rose Chatkin has been and still is a director and treasurer of Jewel Productions, Inc.

18. Ever since their incorporation, Celia H. Cohen has been and still is a director and secretary of Eureka Productions, Inc., and Foreign and Domestic Music Corp., and secretary of Jewel Productions, Inc., respectively. She is now a director and president of Jewel Productions, Inc., and was Secretary, treasurer and a director of Cummins Pictures, Inc., during its existence.

19. On August 22, 1941, the date on which she signed the documents now marked in this case as defendants' exhibits H, I, J, and K, respectively, Rose Chatkin was and she still is an officer and director of Foreign and Domestic Music Corp., plaintiff herein.

20. In an action brought by Max Weingarten and Michael M. Wyngate, Inc., as plaintiffs, against the Eureka Productions, Inc., Samuel Cummins and Rose Chatkin as defendants, in the Supreme Court of the State of New York, it was adjudged on March 26, 1941, that Max Weingarten and Michael M. Wyngate, Inc., as plaintiffs in that action, exclusively own all the distribution, exploitation and exhibition rights, and all other rights, in the motion picture production entitled "Ecstasy," and any and all other rights of whatsoever kind therein; and defendants in that action were ordered and directed to deliver all positive prints, lavendar prints, negatives, dupe negatives, accessories, stills, advertising matter, trailers, and all other physical properties and appurtenances pertaining or relating to said motion picture to Bonded Film Storage, to be impounded, subject to the orders of the court.

21. On August 22, 1941, Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc., entered into an agreement in writing, evidenced by defendants' Exhibits H, and K, with Michael M. Wyngate, Inc., and Max Weingarten, wherein and whereby the former sold, assigned, transferred and set over unto the latter, all properties pertaining to the mo-

tion picture film known as "Ecstasy," including all versions thereof, including a certain number of positive prints, one pictorial dupe negative and one sound track negative of the motion picture, all advertising accessories and materials pertaining to the picture and all other physical properties relating to the picture in the possession or control of the sellers, assignors and transferors. Paragraph "3" of this written agreement, as set out in Defendants' Exhibit K, contains the following provision, to-wit: "You understand and recognize that we are not the copyright owners of the music recorded on the sound track of the said picture, and that we assign to you only such rights in the said music as were granted and assigned to us."

22. Upon the sound track of the film above referred to were recorded the following four songs: (1) "Oh, Play Tzigani," (2) "Lost in Ecstasy," (3) "What Do Gypsies Dream," also known as "Down the Gypsy Trail," and (4) "Love Awakens in the Spring."

23. The music of the musical composition entitled "Oh, Play Tzigani," was copyrighted by plaintiff herein under the laws of the United States and a copyright secured therefor on or about January 30, 1936. The copyright was registered in the name of plaintiff and entered as Class E, Publication No. 53146, and a certificate of Copyright Registration was duly issued to plaintiff under the seal of the Copyright Office.

24. The music of the musical composition entitled "Lost in Ecstasy" was copyrighted by plaintiff herein under the laws of the United States and a copyright secured therefor on or about March 3, 1936. The copyright was registered in the name of plaintiff and entered as Class E, Publication No. 53738, and a Certificate of Copyright Registration was duly issued to plaintiff, under the seal of the Copyright Office.

25. The music of the musical composition entitled "What do Gypsies Dream" was copyrighted by plaintiff herein under the laws of the United States and a copyright secured therefor on or about March 3, 1936. The copyright was registered in the name of plaintiff and entered as Class E,

Publication No. 53737, and a Certificate of Copyright Registration was duly issued to plaintiff under the seal of the Copyright Office.

26. The music of the musical composition entitled "Love Awakens in the Spring" was copyrighted by plaintiff under the laws of the United States and a copyright secured therefor on or about March 11, 1936. The copyright was registered in the name of plaintiff and entered as Class E, Publication No. 53902, and a Certificate of Copyright Registration was duly issued to plaintiff under the seal of the Copyright Office.

27. The music of the musical composition entitled "Down the Gypsy Trail" was copyrighted by plaintiff under the laws of the United States and a copyright secured therefor on or about November 20, 1940. The copyright was registered in the name of plaintiff and entered as Class E, Publication No. 89489, and a Certificate of Copyright Registration was duly issued to plaintiff under the seal of the Copyright Office.

28. Ever since the issuance of the Certificates of Copyright referred to in Findings of Fact numbered 23, 24, 25 26, and 27, plaintiff Foreign and Domestic Music Corp. has been and still is the sole and exclusive copyright owner of these songs.

29. Plaintiff herein did not sign, was not mentioned in, and was and is not a party to any of the documents marked in this case as defendants' Exhibits H, I, J and K, respectively.

30. Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc., under and by virtue of the documents marked herein as defendants' Exhibits H, I, J and K, sold the properties mentioned therein, subject to the rights of the copyright owner in and to the songs referred to. They did not own and did not sell to Michael M. Wyngate, Inc., and Max Weingarten the copyright to the songs.

31. The negotiations leading up to the ultimate signing by the respective parties thereto, of the documents marked herein as defendants' Exhibits H, and K, were carried on and conducted between Bertram A. Mayers, as attorney and agent for

Max Weingarten and Michael M. Wyngate, Inc., and William B. Sandler, as attorney and agent for Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc. All of the terms as embodied in the several documents were concluded between the attorneys for the respective parties. The parties themselves never met or spoke to each other throughout the negotiations.

32. During the course of the negotiations which culminated in the signing of the documents marked defendants' Exhibits H and K, William B. Sandler, the attorney for Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc., informed Bertram A. Mayers that the plaintiff corporation was the copyright owner of the songs referred to in this case.

33. The agreement of August 22, 1941, evidenced by defendants' Exhibits H, and K, is definite and unambiguous. Paragraph "3" of Exhibit K (set forth in Finding of Fact No. 21) gave due and sufficient notice to Michael M. Wyngate, Inc., and Max Weingarten that Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc., were not the copyright owners of the songs.

34. William B. Sandler, the attorney for Eureka Productions, Inc., Samuel Cummins, Rose Chatkin and Jewel Productions, Inc., in the negotiation and culmination of the agreement marked defendants' Exhibits H, and K, herein, practiced no fraud of any kind whatsoever upon Bertram A. Mayers, the attorney for Michael M. Wyngate, Inc., and Max Weingarten.

35. On or about October 27, 1941, Michael M. Wyngate, Inc., defendant herein, delivered to Max Weingarten, two prints of the film entitled "Ecstasy," upon which were recorded the four songs herein referred to for distribution and exhibition on the West Coast of the United States.

36. On or about October 27, 1941, defendant Michael M. Wyngate, Inc., delivered to Max Weingarten, through the Fiedler Laboratory, at Los Angeles, Calif., four additional prints with the four songs recorded thereon, for distribution and exploitation on the West Coast.

37. Thereafter and prior to July 3, 1942, the film was shown by Max Weingarten at the Colony Theatre, Hollywood, California, with the four songs recorded thereon.

38. The film referred to in Finding of Fact No. 8, had recorded thereon the four songs referred to in this case. Defendants exhibited this film with the four songs recorded thereon from July 3, 1942, through September 30, 1942, at the Gaiety Theatre, in the Borough of Manhattan, City of New York.

39. On or about September 19, 1942, plaintiff, by its attorney, notified the defendants and each of them separately and respectively that they were infringing upon the copyright of plaintiff to the four songs referred to herein and demanded that they desist from further infringement thereof.

### Conclusions of Law.

1. Since on or about January 30, 1936, plaintiff has been and still is the copyright owner and holder to the music of the musical composition entitled "Oh, Play Tzigani."

2. Since on or about the third day of March, 1936, plaintiff has been and still is the copyright owner and holder to the music of the musical composition entitled "Lost in Ecstasy."

3. Since on or about the third day of March, 1936, plaintiff has been and still is the copyright owner and holder to the music of the musical composition entitled "What Do Gypsies Dream."

4. Since on or about the 11th day of March, 1936, plaintiff has been and still is the copyright owner and holder to the music of the musical composition entitled "Love Awakens in the Spring."

5. Since on or about the 20th day of November, 1940, the plaintiff has been and still is the copyright owner and holder to the music of the musical composition entitled "Down the Gypsy Trail."

6. Defendants and each of them infringed upon each and all of the copyrights to the musical compositions referred to in Conclusions of Law numbered 1, 2, 3, 4 and 5. The acts of infringement were done without the consent of plaintiff.

■ 7. Defendants, their distributors, agents, servants, employees, and any of them, and any and all persons, firms and corporations who shall have derived any right, title and interest in and to the whole or any part of the motion picture "Ecstasy" with the music to the musical compositions referred to in the foregoing conclusions of Law numbered 1, 2, 3, 4 and 5, recorded therein, or to a sound track, separate and apart from said film but upon which said musical compositions are nevertheless recorded, or to any negative or positive films, or any other copies, made or derived from said musical compositions, and any and all persons, firms and corporations who shall have obtained any right, license, grant or authorization by, through, from or under any of the defendants, to print, reprint, copy, publish, produce, vend, reproduce, distribute, exhibit or give any performance of the said musical compositions, any and all persons, firms and corporations acting by, through, under or in concert with defendants or any of them in any manner whatsoever, either directly or indirectly, be and hereby they are perpetually enjoined and restrained from printing, reprinting, copying, publishing, vending, producing, reproducing, performing or exhibiting the musical compositions aforesaid, in the form of or by means of any negative or positive motion picture films, or otherwise.

■ 8. Defendants and each of them, their agents, employees, successors and assigns, and such persons, firms and corporations to whom delivery has been made of, or in whose possession or under whose control there is, the whole or any part or parts of the said musical compositions or any negative films or positive prints or other materials on which copies of the whole or any part of plaintiff's said copyrighted musical compositions is contained, or any plates, molds, matrices, devices, or other means for making infringing copies of the whole or any part of plaintiff's said copyrighted musical compositions, are hereby directed and ordered to deliver up the same on oath to the Clerk of this Court to be impounded subject to the orders of this Court.

■ 9. For the purpose of ascertaining plaintiff's damage and defendants' profit from said infringement, the matter shall be referred to ———— as a Special Master to ascertain and report to the Court, with his recommendations, for the purpose of aiding and guiding the Court, but subject to examination, consideration and approval of the Court, the amount of such damages, if any, as the plaintiff may have suffered due to the aforesaid infringements, as well as all the profits, if any, which defendants and each or either of them shall have made from such infringements, pursuant to the provisions of Section 25 of the Copyright Act, 17 U.S.C.A. § 25.

■ 10. For the purpose of the foregoing reference, the plaintiff shall have the right to cause an examination of the defendants and their officers, servants, agents and employees and each of them, and any and all other parties or witnesses who may have any knowledge, or information in regard to the subject matter, and a right to the production of all the books, vouchers, contracts, documents and records of the defendants and each of them, and the examination of such other witnesses, whose testimony may be material to the issues, and to production of their books and records, and that said defendants and other witnesses and each of them attend for such purposes before said Special Master from time to time as said Special Master shall direct. The allowance to the Special Master, and other costs of said reference shall be charged to and be borne by the respective parties to this action in such manner as may be later adjudged and ordered by the Court.

11. Plaintiff is entitled to recover of the defendants, jointly or severally, its costs in this suit (not including at this time the costs of the reference) to be taxed by the Clerk of this Court.

12. Defendants have failed to sustain the First Defense contained in their Second Amended Answer and that defense is hereby dismissed upon the merits.

13. Defendants have failed to sustain the second defense contained in their second amended answer and that defense is hereby dismissed upon the merits.

14. Defendants have failed to sustain the third defense contained in their second

amended answer and that defense is hereby dismissed upon the merits.

15. Defendants have failed to sustain the fourth defense contained in their second amended answer and that defense is hereby dismissed upon the merits.

16. Jurisdiction of this suit is hereby retained for the purpose of making any further orders necessary or proper to be made to effect a final judgment herein after the reference has been concluded.

Settle order on notice.